**ZIMMERMAN REED LLP**
Ryan J. Ellersick (SBN 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel (877) 500-8780
Fax (877) 500-8781
ryan.ellersick@zimmreed.com

**ZIMMERMAN REED LLP**
Zain A. Shirazi (SBN 302841)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel (612) 341-0400
Fax (612) 341-0844
zain.shirazi@zimmreed.com

*Attorneys for Plaintiffs and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN BAKKER and NOAH LUNDGREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>BLACK RIFLE COFFEE COMPANY LLC and BRC INC.<br><br>Defendants. | Case No.<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. Defendants Black Rifle Coffee Company LLC and BRC Inc. ("Defendants") sell coffee in various retail stores across the country, as well as through their website. Defendants market their coffee as "America's Coffee," boldly including that slogan along the top of their coffee bags. Defendants' coffee bag label also prominently displays the American flag on the front. Defendants' coffee bag labels, therefore, use unqualified "Made in USA" advertisements.

2. The effect of Defendants' use of unqualified Made in USA labeling on its coffee bags is to cause the reasonable consumer to believe that Defendants sell coffee that is sourced and produced in the United States. In other words, Defendants' labeling leads the reasonable consumer to believe that Defendants sell "American Coffee." Below are several of Defendants' coffee labels.

3. As shown in these images and as discussed further below, Defendants' use of the "America's Coffee" slogan along with the prominent display of the American flag on the front of the label is substantially similar across nearly all of Defendants' coffee bags.



4. But none of the coffee that Defendants sell is grown or produced in the United States. By labeling their coffee as "America's Coffee" and prominently displaying the American flag on the front of the bags, Defendants are misleading and deceiving consumers in California and New York into believing that Defendants sell American coffee when in fact they do not.

5. Defendants are able to charge a premium and increase demand for their coffee in part because of their Made in USA advertising.

6. Reasonable consumers understand that Made in USA advertising—such as the use of the slogan "America's Coffee" and display of the American flag—means that all or virtually all of the product is made in the United States—from the sourcing of raw materials, to the processing of those materials, to the final packaging.

7. Many consumers try to "shop American," and prefer to support products that are made in the United States. Consumers are also often willing to pay more for products that are made in the United States.

8. But Defendants' sourcing of the raw coffee beans and processing of the coffee fruit into dried coffee beans occurs outside of the United States. In other words, Defendants' product is substantially made, manufactured, or produced outside of the United States.

9. California law makes it unlawful for a company to advertise merchandise using phrases such as, "'Made in U.S.A.,' 'Made in America,' 'U.S.A.,' *or similar words*," if the merchandise has been "substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7 (emphasis added). Use of the slogan, "America's Coffee" along with the prominent display of the American flag is clearly "similar" to use of the phrase "U.S.A." *Id.* Defendants therefore use the type of unqualified Made in USA advertising that California law prohibits. Because Defendants' coffee is "substantially made, manufactured, or produced outside of the United States," Defendants' use of the slogan "America's Coffee" and display of the American flag violates California law.

10. Similarly, New York law makes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" unlawful. N.Y. Gen. Bus. Law § 349(a), (h). New York law also prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

11. While New York does not have a law that specifically governs Made in USA claims like California does, the Federal Trade Commission ("FTC") has issued a regulation ("the Regulation") that governs Made in USA advertising. *See* 15 C.F.R. § 323 *et. seq.* That Regulation defines Made in USA advertising broadly to include implied representations that a product "is of U.S. origin, including, but not limited to, a representation that such product . . . is 'made,' 'manufactured,' 'built,' 'produced,' 'created,' or 'crafted' in the United States or in America, or any other unqualified U.S.-origin claim." 16 C.F.R. § 323.1(a). Use of the slogan, "America's Coffee," along with the American flag, constitutes an unqualified U.S.-origin claim under the Regulation. The FTC's Guidance on this subject makes this even clearer. *See* FTC, "Complying with the Made in USA Standard," July 2, 2024, *available at* https://www.ftc.gov/business-guidance/resources/complying-made-usa-standard (last visited August 19, 2025) (hereinafter "FTC Guidance"). That Guidance provides that displaying the American flag "may convey a claim of U.S. origin either by [itself], or in conjunction with other phrases or images." Here, the use of the flag along with the phrase "America's Coffee" creates the overall impression for the reasonable consumer that Defendant's coffee is of U.S. origin. But Defendant's coffee is not of U.S. origin and therefore violates 15 U.S.C. 45a, along with the Regulation and FTC Guidance. Defendant's coffee, in turn, therefore violates New York law prohibiting deceptive or false advertising.

12. Plaintiffs Justin Bakker and Noah Lundgren ("Plaintiffs"), residents of California and New York, respectively, purchased various types of Defendants' coffee bags—all of which use substantially similar labels in relevant part—from physical stores in their respective states within the last three years. In doing so, they relied in part on Defendants' false and misleading Made in USA advertising in deciding to purchase Defendants' products. Plaintiffs believed Defendants' use of the slogan "America's Coffee" and the prominent display of the American flag on the front of their label meant that Defendants' coffee was all or virtually all produced in the United States, including that the coffee bean was sourced and produced in the United States. Plaintiffs are among the many Americans who try to buy American-made products and are sometimes willing to pay more for American-made products. Had Plaintiffs known the truth (that Defendants' coffee is not, in fact, made in the United States), Plaintiffs would have paid less for Defendants' products or they would not have purchased Defendants' coffee at all. As a result, Plaintiffs have been deceived and suffered economic injury.

13. Plaintiffs bring this lawsuit on behalf of themselves and classes of similarly situated individuals to recover damages for Defendants' false and misleading advertising, and to seek an injunction to stop Defendants from continuing their false and misleading Made in USA advertising.

14. Plaintiff Bakker brings this action individually, and on behalf of a Class of similarly situated California residents and asserts the following California claims: (I) violation of Cal. Bus. & Prof. Code § 17533.7; (II) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.; (III) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*.; and (IV) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

15. Plaintiff Lundgren brings this action individually, and on behalf of a Class of similarly situated New York residents and asserts the following New York claims: (V) violation of N.Y. Gen. Bus. Law § 349; and (VI) violation of N.Y. Gen. Bus. Law § 350.

## PARTIES

16. Plaintiff Bakker is a natural person who resides and intends to remain in Turlock, California. At all relevant times, Plaintiff Bakker was a citizen of California. Until about February 2025, Plaintiff regularly purchased Defendants' coffee bags, normally Defendants' "Wakin the Neighbors" coffee bag but also their "Spirit of '76" bags, at various stores in Turlock and Merced, including Save Mart and Safeway. In purchasing Defendants' coffee, Plaintiff Bakker saw and relied on the slogan "America's Coffee," and the American flag on the front of Defendants' product. Plaintiff Bakker believed based on this advertising that Defendants' coffee was all or virtually all produced in the United States, and that was an important factor in Plaintiff Bakker's purchasing decision. Had Plaintiff Bakker known that Defendants' coffee was not in fact made in the United States (i.e., that Defendants source and produce their coffee beans outside of the United States), Plaintiff Bakker would have paid less for Defendants' product or purchased coffee from a competitor. Therefore, Plaintiff Bakker suffered injury in fact and lost money as a result of Defendants' false and misleading practices.

17. Plaintiff Lundgren is a natural person who resides and intends to remain in Kingston, New York. At all relevant times, Plaintiff Lundgren was a citizen of New York. On or around June 28, 2025, Plaintiff Lundgren purchased Defendants' "Tactisquatch" coffee bag at the Walmart in Kingston,

New York. In purchasing Defendants' coffee, Plaintiff Lundgren saw and relied on the statements "America's Coffee," and the American flag on the front of Defendants' product. Plaintiff Lundgren reasonably believed that Defendants' coffee was all or virtually all produced in the United States, and that was an important factor in Plaintiff Lundgren's purchasing decision. Had Plaintiff Lundgren known that Defendants' coffee was not in fact made in the United States (i.e., that Defendants source and produce their coffee beans outside of the United States), Plaintiff Lundgren would have paid less for Defendants' product or purchased coffee from a competitor. Therefore, Plaintiff Lundgren suffered injury in fact and lost money as a result of Defendants' false and misleading practices.

18. Defendant Black Rifle Coffee Company LLC is a Delaware corporation with its principal place of business in Salt Lake City, Utah. Defendant BRC Inc. is a Delaware corporation with its principal place of business in Salt Lake City, Utah. Defendants operate the Black Rifle Coffee Company website, at www.blackriflecoffee.com. Defendants sell their coffee through their website and other businesses, including through Albertsons, Amazon, Giant, Kroger, Sam's Club, Shop Rite, Target, Tractor Supply Co., and Walmart. Defendants are listed on the New York Stock Exchange under the symbol "BRCC." Defendants have a market cap of over $370 million.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

20. This Court has personal jurisdiction over Defendants because Defendants purposely avail themselves of the benefits of the forum and because a substantial portion of the events giving rise to this complaint occurred in this District. Defendants do business in California. They advertise and sell their merchandise in California, and they serve a market for its coffee in California. Defendants' coffee has been sold to California consumers.

21. Venue is proper under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff Bakker resides and purchased Defendants' coffee in this District.

## FACTUAL ALLEGATIONS

**A. Defendants Advertise Their Coffee as American Coffee.**

22. Defendants use the slogan "America's Coffee" on the front of their coffee bags, along with a prominent display of the American flag, as depicted below in these images of two of Defendants' many coffee bags:







23. The labels for Defendants' various coffee bags are almost all identical or substantially similar in that they display the "America's Coffee" slogan along with an American flag on the front of the package.

24. Defendants' use of the slogan "America's Coffee" and display of the American flag are not qualified on the front of the label where the slogan and flag appear. Defendants' use of the "America's Coffee" slogan and American flag therefore amount to unqualified USA-origin claims.

25. But companies may only use unqualified USA-origin claims where their product is all or virtually all made in the United States, including the sourcing and processing of raw materials. Defendants are violating the law because they use unqualified USA-origin claims to advertise their coffee, even though their coffee is sourced and processed outside of the United States.

**B. Defendants Source Their Coffee From Outside of the United States.**

26. Coffee is grown near the equator in tropical areas, in a region known as the coffee belt.

27. According to the United States Department of Agriculture, the United States ranks 38th among the world's top coffee producers, with Brazil, Vietnam, Colombia, Indonesia, Ethiopia, Uganda, India, Honduras, Peru, and Mexico (in that order) accounting for nearly 90% of the world's coffee production. *See* U.S. Department of Agriculture, "Production – Coffee," *available at* https://www.fas.usda.gov/data/production/commodity/0711100 (last visited Sep. 4, 2025).

Top Producing Countries

| Market | % of Global Production | Total Production (2024/2025, 60 KG Bags) |
|---|---|---|
| Brazil | 37% | 64.7 Million |
| Vietnam | 17% | 29 Million |
| Colombia | 8% | 13.2 Million |
| Indonesia | 6% | 10.7 Million |
| Ethiopia | 6% | 10.63 Million |
| Uganda | 4% | 6.7 Million |
| India | 4% | 6.2 Million |
| Honduras | 3% | 5.52 Million |
| Peru | 2% | 3.88 Million |
| Mexico | 2% | 3.87 Million |

2024/2025 Coffee Production



28. So while it is possible to grow coffee in the United States—generally in Hawaii, but also in Puerto Rico and California—the United States consumes less than 1% of U.S.-origin coffee. All commercially grown U.S.-origin coffee comes from Hawaii.

29. Defendants do not use any Hawaiian grown coffee in their products. Instead, they source all of their coffee from outside of the United States.

**C. Defendants' Coffee is Processed Outside of the United States, and That Processing Substantially Transforms the Raw Coffee Cherries Into Coffee Beans.**

30. The coffee that Defendants' source from outside of the United States is processed into coffee beans outside of the United States.

31. Processing raw coffee cherries into coffee beans is a lengthy and laborious process that substantially transforms coffee from the cherries that grow on a plant into green coffee beans that are then roasted and consumed in the United States. Below on the left is an image of coffee cherries as they appear on a plant. Below on the right is an image of dried coffee beans as they appear when they are ready to be exported to countries like the United States for roasting and bagging. As these images show, coffee cherries undergo a substantial transformation into dried coffee beans, and that entire process occurs outside of the United States.



32. The process for transforming coffee cherries into coffee beans proceeds as follows.

33. First, coffee seedlings are generally planted in large beds in shaded nurseries, watered frequently, and protected from bright sunlight until they're ready to be planted permanently. Once planted, it takes about three to four years before those coffee plants will bear coffee cherries.

34. Coffee cherries are then harvested. They are harvested by hand in much of the world because coffee cherries do not ripen at the same time. Even coffee cherries on the same branch may ripen at different times. Therefore, to avoid picking unripe coffee cherries, much of the world hand-picks coffee cherries. In Brazil, where land is flat and coffee is grown on large farms, cherries are generally machine harvested.

35. Once harvested, coffee cherries pass through water channels and a density sorting chamber to be separated by weight, with the lighter, unripe fruits floating to the top of the water tank, and the heavier, ripe fruits sinking to the bottom. The cherries then pass through a series of rotating drums to separate them by size. This process may also occur once the seeds are removed.

36. Next, the skin, pulp, and mucilage must be removed from the coffee cherry to retract the seeds. There are two common methods to do this. The first is called natural processing. It involves spreading the coffee cherries out on large surfaces and letting them dry in the sun or in a greenhouse for weeks until the seeds can be removed. While drying, the coffee cherries must be constantly raked and covered at night or when it is raining to prevent spoilage.

37. The second method uses a washing method, which is the more common method today. This method requires pulping the cherries—i.e., separating the tough, cherry-like skin of the fruit from the seed—using a de-pulping machine. Unripe cherries or cherries that weren't properly de-pulped are separated out. After de-pulping, the seeds are still covered in their sticky fruit material, called mucilage. The sticky seeds are then placed in large fermentation tanks. Fermentation can occur through a wet or dry process. If water-filled fermentation tanks are used, naturally occurring enzymes dissolve the mucilage from the beans. In this process, the time, temperature, and velocity of the fermentation process must be moderated. The wet process usually takes eight to 15 hours to ferment. If dry fermentation tanks are used, seeds are left overnight to ferment and can take anywhere between 12 and 48 hours.

38. Once fermentation is complete, the beans are rinsed and agitated to remove the mucilage. The beans are then cleaned and left in their parchment layer and are ready for drying.

39. The beans are either sun-dried by spreading them in a thin layer on drying tables in a greenhouse or on the floor outside, where they are turned and raked regularly, and the temperature is monitored. If the beans are dried outside, the process can take about one or two weeks. If dried in a greenhouse, the process can take three or four weeks. The beans can also be dried in large rotary machines. If machine-dried, the process usually takes less than two days. Whichever process is used, the beans are dried from a moisture level of about 60% to about 11%.

40. Once dried, the beans are bagged and stored with their parchment layer intact so that moisture levels can even out among the beans. This usually takes several months.

41. After storing, the beans are then milled just before they are shipped. Beans can be either dry-milled or wet-milled. Dry-milling is common for large-scale operations but requires expensive equipment. In the dry-milling process, the beans with the parchment layer intact are placed into a machine that removes any rocks, sticks, or dust. Clean parchment coffee beans are then funneled into a huller. The huller removes what is left of the fruit on the bean, whether it is the crumbly parchment skin of wet-processed coffee or the entire leather fruit in dry processed-coffee.

42. Because roasters like beans to be similar in size to avoid an uneven roast, a size grater is used to funnel coffee into different containers. The coffee is then separated by density using a vibrating gravity separator. The beans then pass through an electronic color sorter, which detects visual defects in the beans to discard defective beans.

43. A third, hybrid method involves a blend of the natural and wet methods described above.

44. This entire process transforms the coffee cherries that grow on plants into dried, green coffee beans that are shipped overseas to coffee sellers such as Defendants.

45. Once Defendants receive the dried, green coffee beans, their involvement in the production process is to roast the beans and to bag them. Roasting involves heating the dried, green coffee beans in large industrial roasters at temperatures between 180 to 250 degrees Celsius (or 356 to 482 degrees Fahrenheit) for anywhere between seven to 20 minutes, depending on whether the seller wants a light, medium, or dark roast. The roasted coffee beans are then rapidly cooled in vats and are then bagged and ready for sale.

46. Nearly the entire process for making Defendants' coffee—from growing and harvesting the coffee cherries to producing the dried, green coffee beans—occurs outside of the United States.

**D. Plaintiffs were deceived by Defendants' Made in USA advertising.**

47. Plaintiff Bakker relied on, and was deceived by, Defendants' Made in USA advertising. Plaintiff Bakker tries to support companies that sell products that are produced in the United States. He will sometimes select products that are made in the United States over competitors, and he is sometimes willing to pay more for products that are made in the United States. Plaintiff Bakker decided to purchase Defendants' coffee because he saw the slogan "America's Coffee" and the American flag prominently displayed on the label. Plaintiff Bakker understood this advertising to mean that Defendants sold American coffee—i.e., coffee that is sourced and produced in the United States. Plaintiff Bakker was a regular purchaser of Defendants' coffee until about February 2025. He purchased Defendants' coffee from various stores, including Save Mart and Safeway. He usually purchased Defendants' "Wakin the Neighbor" bag of coffee, but he has also purchased their "Sprit of '76" bag. The labels for both of these bags—which are pictured below—contain the "America's Coffee" slogan and American flag on the front of the label and therefore contain substantially similar Made in USA advertising to Defendants' many other coffee bags.






48. Plaintiff Lundgren relied on, and was deceived by, Defendants' Made in USA advertising. Plaintiff Lundgren tries to support companies that sell products that are produced in the United States. He will sometimes select products that are made in the United States over competitors, and he is sometimes willing to pay more for products that are made in the United States. Plaintiff Lundgren decided to purchase Defendants' coffee because he saw the slogan "America's Coffee" and the American flag prominently displayed on the label. Plaintiff Lundgren understood this advertising to mean that Defendants sold American coffee—i.e., coffee that is sourced and produced in the United States. On June 28, 2025, Plaintiff Lundgren purchased Defendants' "Tactisquatch" coffee bag from Walmart. The label for Defendants' "Tactisquatch" coffee bag—which is pictured below—contains the "America's Coffee" slogan and American flag on the front of the label and therefore contains substantially similar Made in USA advertising to Defendants' many other coffee bags.




**CLASS ACTION ALLEGATIONS**

49. Plaintiff Bakker brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed class ("California Class"): all persons who, while in the state of California and within the applicable statute of limitations, purchased Defendants' coffee bags.

50. Plaintiff Lundgren brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed class ("New York Class"): all persons who, while in the state of New York and within the applicable statute of limitations, purchased Defendants' coffee bags.

51. Excluded from each of the Classes are Defendants; officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest in, are a parent or subsidiary of, or which is otherwise controlled by Defendants; and Defendants' affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assignees. Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

52. Plaintiffs reserve the right to modify and/or amend the Class definitions, as necessary.

53. All members of the proposed Class are readily identifiable.

54. All requirements for class certification under Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) are satisfied.

55. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Plaintiffs are informed and believe that the proposed Classes includes tens of thousands or hundreds of thousands of people based on public reports regarding Defendants' operations, and the number of authorized sellers of Defendants' coffee, which includes major retailers such as Walmart and Safeway. The precise number of the Class Members is unknown to Plaintiffs but may be ascertained from Defendants' records.

56. **Commonality and Predominance.** This action involves common questions of law and fact to the Plaintiffs and the Class Members, which predominate over any questions only affecting individual Class Members. These common legal and factual questions include, without limitation: whether Defendants engaged in the course of conduct alleged; whether Defendants used Made in USA advertising and labeling; whether Defendants sold coffee that is sourced and produced outside of the United States; whether a substantial portion of the production of Defendants' coffee occurs outside of

the United States; whether Defendants' Made in USA advertising is likely to deceive a reasonable consumer; whether Defendants' Made in USA advertising is material to a reasonable consumer; whether Defendants' Made in USA advertising violates the laws identified below; whether Plaintiffs and the Class members have suffered economic injury as a result of Defendants' false and/or deceptive practices; and whether Plaintiffs and Class members are entitled to actual damages and or other relief.

57. Defendants engaged in a common course of conduct giving rise to the claims asserted by Plaintiffs on behalf of themselves and the Classes. Individual questions, if any, are slight by comparison in both quality and quantity to the common questions that control this action.

58. **Typicality.** Plaintiffs' claims are typical of those of other Class Members because, like members of each Class, Plaintiffs purchased Defendants' coffee. Defendants' false and deceptive Made in USA advertising impacted all Class Members in a similar manner.

59. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes and have retained counsel experienced in complex consumer class action litigation. They intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Classes.

60. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in managing this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. Absent a class action, individual consumers like Plaintiffs would find the cost of litigating their claims prohibitively high and would have no effective remedy for monetary relief.

**LEGAL CLAIMS**

**COUNT I**

**Violation of Cal. Bus. & Prof. Code § 17533.7**

*(On Behalf of Plaintiff Bakker and the California Class)*

61. Plaintiff Bakker re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

62. Under California law, it is unlawful "to sell or offer for sale in [California] any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' 'Made in America,' 'U.S.A.' or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7(a).

63. Defendants have violated, and continue to violate, this law by selling and offering for sale its products within California that they advertise and label as made in the United States.

64. The safeharbor contained in Cal. Bus. & Prof. Code § 17533.7(b) does not apply. That safeharbor provides that a company may use foreign articles or parts if those foreign articles or parts constitute "not more than 5 percent of the final wholesale value of the manufactured product." Because Defendants sell coffee that is sourced and almost entirely processed outside of the United States, that coffee is clearly more than 5% of the final wholesale value of Defendants' product.

65. Similarly, the safeharbor contained in Cal. Bus. & Prof. Code § 17533.7(c) does not apply. That safeharbor provides that companies may source foreign products that constitute up to 10 percent of the final wholesale value of the manufactured product where the company can show that it cannot produce or obtain the foreign material from a domestic source. Because coffee can be and is in fact grown and processed in the United States, Defendants cannot avail themselves of this safeharbor. (In any event, the coffee that Defendants sell is more than 10% of the final wholesale value of their product since coffee *is* their product.)

66. Defendants purposefully used false and deceptive Made in USA advertising. On the side of their coffee bag, in inconspicuous lettering, Defendants reveal the truth: that they only roast their coffee in the United States. But by burying that statement on the side label while simultaneously

highlighting the unqualified Made in USA advertising on the front of the label, knowing that this Made in USA advertising is false and/or deceptive, Defendants engaged in conduct likely to mislead reasonable consumers.

67. As a direct and proximate result of Defendants' violations, Plaintiff and the California Class members are entitled to damages and/or restitution of excess monies paid to Defendants relating to the false and deceptive Made in USA representations.

**COUNT II**

**Violation of California's Consumer Legal Remedies Act ("CLRA")**

**Cal. Civ. Code § 1750 et. seq.**

*(On Behalf of Plaintiff Bakker and the California Class)*

68. Plaintiff Bakker re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

69. Plaintiff Bakker and the California Class are "consumers," as defined by California Civil Code § 1761(d).

70. Defendants sell "goods" as defined by California Civil Code § 1761(a).

71. Plaintiff and the California Class have engaged in "transactions" with Defendants as defined by California Civil Code § 1761(e).

72. As alleged above, Defendants have undertaken unfair or deceptive acts or practices in violation of California's CLRA, including:

a. "Misrepresenting the source, sponsorship, approval, or certification of goods or services," § 1770(a)(2);

b. "Using deceptive representations . . . in connection with goods or services," § 1770(a)(4);

c. "Representing that goods or services have . . . characteristics . . . that they do not have," § 1770(a)(5);

d. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," § 1770(a)(7); and

e. "Advertising goods or services with intent not to sell them as advertised," § 1770(a)(9).

73. Defendants misrepresented to consumers that their coffee products were made in the United States when, in fact, the coffee products are sourced and produced outside the United States.

74. Plaintiff reasonably relied on Defendants' deceptive, untrue, and misleading advertising. The misleading Made in USA claims were material because a reasonable consumer would consider whether a product was made in the United States an important factor in deciding to purchase the product. The Made in USA claims were a substantial factor in Plaintiff's decision to purchase Defendants' coffee.

75. Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff and the California Class. Absent Defendant's misrepresentations, Plaintiff would not have purchased Defendants' coffee or would have paid substantially less for it.

76. Plaintiff seeks relief for violations of the CLRA in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Class.

77. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market its coffee products with unqualified Made in USA claims. Injunctive relief is appropriate because Defendant continues to deceptively market the coffee products as "America's Coffee" while displaying the American flag on the front label. Plaintiff desires to purchase coffee products and continues to see Defendants' products when he shops. Plaintiff would buy Defendants' coffee products if he knew Defendants' advertising claims were truthful. But given Defendants' deception with respect to the Made in USA claims, Plaintiff cannot trust Defendants' advertising claims about the coffee products absent injunctive relief. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California class, which cannot be achieved through available legal remedies.

78. Plaintiff also seeks public injunctive relief to protect the general public from Defendants' conduct. Defendants' deceptive advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendants from engaging in the misconduct alleged herein.

79. A CLRA venue affidavit pursuant to Cal. Civ. Code §1780(d) is attached as **Exhibit 1**.

80. CLRA § 1782 Notice: On September 11, 2025, a CLRA demand letter was sent to Defendants' headquarters and registered agent via certified mail (return receipt requested), that provided notice of Defendants' violations of the CLRA and demanded that Defendants correct the unlawful practices. On October 3, 2025, in-house counsel for Defendants sent Plaintiffs' counsel an email indicating that she was in receipt of the demand letter. When Plaintiffs' counsel asked if Defendants were interested in discussing a pre-filing resolution as envisioned by the CLRA, Defendant's in-house counsel replied with a single word: "No." To date, Defendants have not taken corrective action or otherwise complied with § 1782(c).

**COUNT III**

**Violation of California's False Advertising Law ("FAL"),**

**Bus. & Prof. Code § 17500, et. seq.**

*(On Behalf of Plaintiff Bakker and the California Class)*

81. Plaintiff Bakker re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

82. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

83. The FAL prohibits not only advertising that is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

84. Defendants violated section 17500 when they advertised and marketed their coffee products through deceptive and misleading representations and omissions disseminated to the public that the coffee is made in the United States, including by prominently displaying the American flag on the front label along with the phrase, "America's Coffee." In fact, Defendants coffee is not made in the United States.

85. Plaintiff reasonably relied on Defendants' deceptive, untrue, and misleading advertising. The misleading Made in USA claims were material because a reasonable consumer would consider whether a product was made in the United States an important factor in deciding to purchase the product. The Made in USA claims were a substantial factor in Plaintiff's decision to purchase Defendants' coffee.

86. Defendants' violations of the FAL directly and proximately caused injury in fact and damages to Plaintiff and the California Class. Absent Defendants' misrepresentations, Plaintiff would not have purchased Defendants' coffee or would have paid substantially less for it.

87. Plaintiff seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Class.

88. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendants from continuing to deceptively market its coffee products with unqualified Made in USA claims. Injunctive relief is appropriate because Defendants continue to deceptively market the coffee products as "America's Coffee" while displaying the American flag on the front label. Plaintiff desires to purchase coffee products and continues to see Defendants' products when he shops. Plaintiff would buy Defendants' coffee products if he knew Defendants' advertising claims were truthful. But given Defendants' deception with respect to the Made in USA claims, Plaintiff cannot trust Defendants' advertising claims about the coffee products absent injunctive relief. Injunctive relief is therefore necessary to prevent Defendants from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California class, which cannot be achieved through available legal remedies.

89. Plaintiff also seeks public injunctive relief to protect the general public from Defendants' conduct. Defendants' deceptive advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendants from engaging in the misconduct alleged herein.

**COUNT IV**

**Violation of the California Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

*(On Behalf of Plaintiff Bakker and the California Class)*

90. Plaintiff Bakker re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

91. The California Unfair Competition Law ("UCL") prohibits, inter alia, "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."[1]

92. Plaintiff, California Class Members, and Defendants are each a "person" under Cal. Bus. & Prof. Code § 17201.

93. The acts, omissions, and conduct of Defendants as alleged herein constitute "business practices" within the meaning of the UCL.

94. Plaintiff and California Class Members bring their claims for injunctive relief as they have no confidence that Defendants have altered their practices. They have an interest in ensuring that false Made in USA advertising is stopped to serve as a deterrent to other companies and to ensure that they can rely on Made in USA advertising as accurate.

95. Plaintiff and California Class Members bring their claims for restitution and injunctive relief in the alternative to their claims for damages.

96. **Unlawful prong:** Defendants engaged in unlawful business practices by violating the CLRA, FAL, and the FTC Act as alleged above.

97. **Fraudulent prong:** As alleged above, Defendants' Made in USA advertising involved unfair, deceptive, and misleading advertising that is likely to deceive members of the public.

98. **Unfair prong:** Defendants' conduct is unfair because Defendants' representations and omissions regarding its coffee products are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendants' conduct. The harm to consumers greatly outweighs the public utility of Defendants' conduct. As determined by both the federal government (on a bipartisan basis) and the California legislature, there is zero public utility to companies falsely advertising their products as made in the United States when in fact they are not. The practice only harms consumers and American manufacturers. Defendants' practice is therefore also immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Plaintiff and the California Class could not have reasonably avoided their injury.

---

[1] CAL. BUS. & PROF. CODE §§ 17200, 17203–04, 17206.

99. Plaintiff reasonably relied on Defendants' deceptive, untrue, and misleading advertising. The misleading Made in USA claims were material because a reasonable consumer would consider whether a product was made in the United States an important factor in deciding to purchase the product. The Made in USA claims were a substantial factor in Plaintiff's decision to purchase Defendants' coffee.

100. Defendants' violations of the UCL directly and proximately caused injury in fact and damages to Plaintiff and the California Class. Absent Defendants' misrepresentations, Plaintiff would not have purchased Defendants' coffee or would have paid substantially less for it.

101. Plaintiff seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Class.

102. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendants from continuing to deceptively market its coffee products with unqualified Made in USA claims. Injunctive relief is appropriate because Defendants continue to deceptively market the coffee products as "America's Coffee" while displaying the American flag on the front label. Plaintiff desires to purchase coffee products and continues to see Defendants' products when he shops. Plaintiff would buy Defendants' coffee products if he knew Defendants' advertising claims were truthful. But given Defendants' deception with respect to the Made in USA claims, Plaintiff cannot trust Defendants' advertising claims about the coffee products absent injunctive relief. Injunctive relief is therefore necessary to prevent Defendants from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California class, which cannot be achieved through available legal remedies.

103. Plaintiff also seeks public injunctive relief to protect the general public from Defendants' conduct. Defendants' deceptive advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendants from engaging in the misconduct alleged herein.

## COUNT V

**Violation of New York General Business Law Section 349**

*(On behalf of Plaintiff Lundgren and the New York Class)*

104. Plaintiff Lundgren re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

105. Plaintiff Lundgren brings this claim on behalf of the New York Class for violation of New York General Business Law section 349.

106. Under section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are . . . declared unlawful." N.Y. Gen. Bus. Law § 349(a).

107. As alleged above, by advertising their products as Made in USA, Defendants have engaged in deceptive acts or practices. Defendants' Made in USA advertising is materially false and misleading. Defendants' Made in USA advertising has caused reasonable consumers to believe that Defendants' coffee is sourced and produced in the United States, when in fact it is not. Defendants source coffee that is grown, harvested, and processed outside of the United States.

108. As a result of Defendants' deceptive advertising, Plaintiff Lundgren paid a price premium for what he believed was coffee made in the United States. Plaintiff Lundgren would not have purchased Defendants' coffee had he known that Defendants' coffee was not actually made in the United States, or he would have paid less had he known the truth.

109. Plaintiff Lundgren and the New York Class members have been injured in fact and lost money as a result of Defendants' false and deceptive advertising. Plaintiff and the Class members seek to recover their actual damages or $50, whichever is greater. N.Y. Gen. Bus. Law § 349(h).

110. Plaintiff and the Class members further seek declaratory relief, restitution, disgorgement, attorneys' fees and costs, and any other relief permitted under the law.

## COUNT VI

### Violation of New York General Business Law Section 350

*(On behalf of Plaintiff Lundgren and the New York Class)*

111. Plaintiff Lundgren re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

112. Under section 350, "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] is . . . declared unlawful." N.Y. Gen. Bus. Law § 350.

113. As alleged above, by advertising their products as Made in USA, Defendants have engaged in deceptive acts or practices. Defendants' Made in USA advertising is materially false and

misleading. Defendants' Made in USA advertising has caused reasonable consumers to believe that Defendants' coffee is made in the United States, when in fact it is not. Defendant's source coffee that is grown, harvested, and processed outside of the United States.

114. As a result of Defendants' deceptive advertising, Plaintiff Lundgren paid a price premium for what he believed was coffee made in the United States. Plaintiff Lundgren would not have purchased Defendants' coffee had he known that Defendants' coffee was not actually made in the United States, or he would have paid less had he known the truth.

115. Plaintiff Lundgren and the New York Class members have been injured in fact and lost money as a result of Defendants' false and deceptive advertising. Plaintiff and the Class members seek to recover their actual damages or $500, whichever is greater. N.Y. Gen. Bus. Law § 350-e(3).

116. Plaintiff and the Class members further seek declaratory relief, restitution, disgorgement, attorneys' fees and costs, and any other relief permitted under the law.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment in their favor as follows:

a. Certification of the Classes pursuant to the provisions of Fed. R. Civ. P. 23 and an order that notice be provided to all Class Members;

b. Designation of Plaintiffs as representatives of the respective Classes and the undersigned counsel as Class Counsel;

c. An award of damages in an amount to be determined at trial or by this Court;

d. Declaring that Defendants' past conduct was unlawful, as alleged herein;

e. Declaring Defendants' ongoing conduct is unlawful, as alleged herein;

f. Enjoining Defendants from continuing the unlawful practices described herein, and awarding such injunctive and other equitable relief as the Court deems just and proper;

g. Awarding Plaintiffs and the Class Members statutory, actual, compensatory, consequential, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

h. Awarding Plaintiffs and the Class Members pre-judgment and post-judgment interest;

i. Awarding Plaintiffs and the Class Members reasonable attorneys' fees, costs, and expenses; and

j. Granting such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the Classes, demand a trial by jury of any and all issues in this action so triable of right.

Respectfully submitted,

**ZIMMERMAN REED LLP**

Dated: November 3, 2025

/s/ *Ryan Ellersick*

Ryan J. Ellersick (SBN 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel (877) 500-8780
Fax (877) 500-8781
ryan.ellersick@zimmreed.com

Zain A. Shirazi (SBN 302841)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel (612) 341-0400
Fax (612) 341-0844
zain.shirazi@zimmreed.com

*Attorneys for Plaintiffs and the Putative Classes*